Morning everyone. I don't hear anything. Before I, I'm gonna call the cases just as they appear on the calendar, but before we start, Judge Bybee and I would just like to acknowledge our Judge John Tiger from the Northern District of California who's sitting with us for today on assignment. We're real pleased that he's with us and we're grateful for the help that he's giving our court. So with that, we'll begin with Hernandez v. Lynch. Good morning and may it please the court, my name is Kristen Kirka and I represent the petitioner Aroldo Isaias Hernandez, also known as Jose Ontiveros Gomez. I'd like to reserve two minutes of my time for rebuttal. The issue in this case is whether the board properly reviewed the immigration judge's decision that the petitioner had not established a 10% chance that he would be persecuted in Mexico on account of his imputed homosexuality or his HIV positive status. We argue that the board did not. Regarding the HIV positive status, the board relied on a single fact which was not even relevant to the disposition of the claim and dismissed the claim without reasoned consideration. Regarding imputed homosexuality, assuming that the agency properly relied on this court's decision in Castro-Martinez, the factual holding of that case has been called into question due to intervening case law, namely the recent case of Avendano-Hernandez v. Lynch, 800 F. 3rd 1072. In the alternative, if the agency did not properly rely upon Castro-Martinez, then remand is proper for a full consideration of the record, which did not occur in the first instance. The following facts are not in dispute in this case. The petitioner is a heterosexual, HIV positive individual from Mexico who provided credible testimony that he feared harm if returned. Did the judge make an express credibility determination? He did not find him not credible. I don't believe he made an express finding. At least with respect to his HIV condition. Correct. There is evidence in the record that... The IJ found him credible. Yes, and there is evidence in the record. There was medical evidence to back that up. Correct. Correct. So that did not appear to be an issue in this case. There's no past persecution in this case. There's not. The question is only about future, well-founded fear. That's correct. And it's going to be imputed homosexuality. Imputed homosexuality and separately HIV positive status. So two distinct social groups that he's arguing. So you have Avendaño, you have Castro-Martinez, you have our opinion in Bringus as well. Correct. So what's, what's in, what, what, how does Avendaño call into question a prior, a prior decision? How can, how can one panel do that to another panel? That's an internal matter for us, but if you're going to tell us that, that Avendaño has somehow overturned Castro, that's, that's a great interest to us. Well, I'm not arguing that it's overturned it, but in Bringus, one of the things that the court focused on was that the argument that whether there's a pattern of practice of persecution against homosexual individuals in Mexico was foreclosed by the court's earlier ruling in Castro-Martinez, where the evidence showed that there were improvements in the conditions of homo, for homosexual individuals in Mexico. However, Avendaño, which came out a couple months after Bringus, but contained more recent evidence from 2011 and 2013, actually showed that that wasn't the case. But wasn't, but wasn't Avendaño, isn't that dealing with transgender? It does, Your Honor. However, it does have evidence that is pertinent to this case. The courts in Castro-Martinez and Bringus both, both focused on a 2010 State Department report that talked about how great strides had been made in Mexico in protecting homosexual individuals. But then in Avendaño, the evidence showed that there had actually been an increase in violence against homosexual individuals since these greater legal protections had been extended. An expert witness noted that the passage of these laws protecting homosexual individuals had actually made the situation for them more precarious, and that the highest number of hate crimes since 2010 actually took place in Mexico City. How is it that you get, that you, that you want to get an inference of, of persecution, which has to be by the government or with the government's acquiescence, if what in Avendaño we have is some evidence of an increase in persecution by people in Mexico because of the additional legal protections that have been enacted by its government? That's true, and I think there is a distinction between what the laws say and what is actually happening in practice in the country. So just because there are these greater laws does not mean that people are actually being protected. And the Department of State report relied upon in all of the cases talks about how even though there are greater protections, it doesn't necessarily mean that the laws are enforced, that they're being enforced to protect individuals. Do you disagree with Judge Bybee's, what's implied in his question, which is that you need to show acquiescence by the government? You do need to show consent or acquiescence by the government. And so are you finding in that State Department report evidence that would support a finding of acquiescence? I think there is, and I think that if the court is going to say that they're looking at the evidence in prior cases and that's been, that question has been foreclosed, then I think it should be remanded so the board can also look at this, or the agency can also look at this recent evidence that's come up in the Avendano case. And I'd also like to note that these questions deal with the homosexuality piece, but they don't deal with the other particular social group of HIV status, which I actually think is the petitioner's strongest argument in this case. Well what's the evidence there that if he were to go back to Mexico he would suffer persecution because of his HIV status? So in the record the petitioner submitted numerous articles regarding the treatment of HIV positive individuals. And it talks about HIV patients suffering frequent violations of their human rights in public health institutions. And what's your, what's your best, what are your best articles? Page 268 of the record is an article that says... The one from 2002? No, this is a 2011 article from IPS News that states that HIV AIDS patients... At the end of that article it says 2002. Where does it say that was 2011? I'm sorry, I see a 2011 up in the upper right hand corner. Yes, that's correct. So at the bottom of page... Yes, copyright 2011. Now I don't know, is that the date that on which it was pulled? Because I have actually reprinted this article. And when I reprinted the article it came out with the date of December 31st, 2002. That is the only date that I... So it appears that the 2011 may be the date on which it was pulled from the service. Okay. In which case this is very, very dated. It's true. We also have two others that are more recent if that is the case. At page 270 there's an article from 2008 from the Houston Chronicle. And that states that HIV and AIDS patients frequently complain of discrimination by nurses and physicians, including the refusal to perform life-saving operations. Okay, now is there any any evidence there that the government is complicit in that? I'm not sure that there is. However, I know that the other article also talks about the fact that when these patients are suffering violations of their human rights, it is at public health institutions. And so our argument is that it's not clear that the board ever looked at this evidence. The board had... This was in the record, right? It was in the record, but there's no indication that the board ever reviewed it. The board basically gave one explanation for upholding the immigration judge's decision regarding the HIV social group. And that was that the Department of State report stated, quote, women and men were given equal access to diagnostic services and treatment for HIV. That's an opposite to the petitioner's claim. His claim was not based on gender. His claim was based on HIV positive status. So really the fact that men and women received equal treatment, regardless of the quality of that treatment, had no bearing on the case. Secondly, his claim was not merely that he wouldn't have access to HIV medication, but that his treatment by persecution. And then cites to all these evidence in the record. So for the board to pick out this one sentence to say this is why we agree with the immigration judge... You know, our case law says that they don't have... You know, the board's supposed to consider everything that's in the record, but we also say that they don't have to go through each one and tick off each piece of evidence and say, well, we agree with this or we disagree. It's not persuasive. It's whatever. That is correct, Your Honor. And if there's nothing in the record to indicate that the board didn't consider all the evidence, a simple catch-all statement saying that they considered all the evidence can be sufficient. But what this court held in Colvie-Holder is that if there is indication that the board did not consider all the evidence, then that catch-all phrase, which isn't even present here... What would be the evidence that the board didn't consider the evidence? I go back to the statement that the only sentence that the board... The only reasoning that the board gives us is one sentence that doesn't really have anything to do with the petitioner's claim. So they say he didn't meet his burden of showing a pattern in practice where the Department of State reports says that men and women receive equal treatment. And that really has very little to do with his actual claim that as a HIV-positive individual, he will be persecuted. It doesn't matter if men and women receive equal treatment. So it certainly appears from this that they didn't consider any of the other evidence. That one sentence is really not dispositive. It doesn't explain why the immigration judge made the correct finding. Did you want to save some time for rebuttal? I would, Your Honor. Thank you. Why don't you save the minute? I'll give you a little more time. Okay, thank you. Good morning, Your Honors. May it please the Court, Tiffany Walters for Respondent, the United States Attorney General. Here petitioners talked a lot about the evidence presented in other cases. And the question before the Court today is whether the evidence in this record compels a contrary conclusion to that reached by the agency. That an agency concluded that petitioner failed to establish eligibility for asylum. He failed to establish that there's a pattern or practice of persecution against HIV-positive individuals or against homosexuals such that every HIV-positive individual and every homosexual in Mexico would have a well-founded fear of persecution. And the evidence in this record just doesn't compel either such sweeping conclusion. So, Leah, let me ask you this. So in Castro-Martinez, we basically said that the 2010 Country Conditions Report just wasn't enough. Correct. Castro-Martinez... Does that mean in every other case, you know, like in every case that follows it, that that means that the 2010 report just isn't, I mean, just your argument is foreclosed? Our position is that each case is an individual case. And the evidence in each case has to be looked at on a case-by-case basis. I mean, certainly Castro-Martinez is relevant and helpful to discussion on a 2010 record. But the evidence in this case is different from in Castro-Martinez. Castro-Martinez actually also included the 2009 country reports, which included a report where police had actually attacked a gay rights activist. So there was some evidence of actual targeted violence, and we don't even have that in this case. The case law is certainly helpful, but each case has, is an individual... So here we have the 2010 report. We have the 2010 report. With all these other articles and pieces of information that are contained in the record. Correct. And looking at them as a whole, the record just doesn't compel a contrary conclusion to that reached by the board. I mean, the board addressed primarily the 2010 country report, but the evidence, other evidence cited by petitioner, simply does, describes predominantly discrimination. It, it, certainly individuals who are homosexual or HIV positive are subject to, I mean, the country report itself acknowledges that discrimination exists. But the other cases, like Bromfeld, where the court did find a pattern of... But you have to have violence, actually, on a person? What's, excuse me? You have to have violence? No, but that would certainly be relevant. I mean, all of, all of the factors are considered. So the access to health care is certainly considered. The social discrimination is definitely all considered, but the question is whether or not the harm that, that individuals in these situations experience rises to the level of persecution. And that's an extreme concept. My point is, as I understand it, is that, well, the government has adopted all these policies and say, they say one, one, something out of one side of their mouth, but in fact, they don't do anything. Well, I don't know that it reflects that they don't do anything. I mean, if you actually look at the evidence, at least on the HIV positives evidence, there's actually a country report showing that Mexico has made great strides in providing universal access to antiretroviral treatment, that in 2009, treatment levels may have reached as high as 82 percent. I mean, those aren't the actions as far as HIV positive status that show a government that is not actually doing anything, that's just making proclamations but not, you know, following them up. I mean, we also see in the country report, the government is affirming laws made in Mexico City. The Supreme Court actually upheld a law allowing gay couples to adopt children and upheld, basically required all the states to recognize gay marriages regardless of where they're performed in Mexico City. So I don't know that we have a record that shows that the government is completely turning a blind eye. I mean, if we had evidence of that, that would be a different situation, but we don't see this evidence of targeted violence that you see in, for example, Bromfield. I mean, there you had the government, you had actually targeted widespread violence against homosexuals by both public and private actors. You had a law criminalizing homosexuality, finding it was punishable by up to 10 years in prison. And you had government, the prime minister making statements saying, we're not going to be pressured into not enforcing these laws. What kind of evidence would the petitioner have to show to establish or to at least make a legitimate case that the government is not enforcing its laws? I think we'd have to see. What could the petitioner do? I mean, if you showed that homosexuals are being regularly attacked by private individuals and the police are refusing to investigate, refusing to take any action, that would definitely be significant. But we don't have that evidence in this case. We just don't have, we definitely have evidence that the government is moving forward in terms of gay rights, but we don't have evidence that it's turning a blind eye to actions by private individuals or that it's unwilling or unable to protect these individuals, that the police aren't taking actions. To what extent did the BIA rely on Castro Martinez? I mean, the BIA in its decision cites Castro Martinez with a seasight. So I think the immigration judge definitely found it on point and the board found it certainly persuasive, but the board's decision is evaluating the evidence in the 2010 country report and the evidence in the record and finding that he hasn't met his burden. So I don't think that the board interpreted Castro Martinez as controlling in this case by any means, but certainly it's helpful to the agency and to this court in terms of comparing the evidence here, the evidence there, and whether or not the evidence is sufficient to demonstrate a pattern or practice of persecution. Petitioners spoke a lot about this new case, Avendano-Hernandez, and as this court pointed out, it was a decision that focused on transgendered individuals. And while there was a 2013 expert testimony that dealt more with current country conditions regarding homosexuals, we don't have that evidence in this record. The agency didn't consider it. And this court is limited to the record that was actually considered by the administrative agency. The petitioner submitted some evidence that persons with HIV status do not receive appropriate treatment, sometimes in hospitals, and they might even be discriminated against. And this was sufficiently widespread that it could be described as a countrywide phenomenon. Putting aside whether that evidence was sufficient to meet petitioner's burden, is it consistent with the finding of acquiescence? In other words, if people with HIV are going into hospitals and not getting treatment, and everybody knows that's happening, or if they're being discriminated against in the treatment that's provided, what relationship does that have to the government's, to government persecution? Well, just to kind of separate acquiescence from the, acquiescence is really the standard in CAT claims, Convention Against Torture claims. And in asylum claims, we're looking at more unwilling or unable to control. That being said, we're looking at similar evidence either way. So here, certainly if, I mean, the government was unable or unwilling to ensure that individuals with HIV positive status were receiving any medical care, that would be significant. But here, we have the government actually making proactive steps to provide treatment to individuals with HIV status. And in fact, you know, there's evidence, I think in one of the articles, the government of Mexico actually appointed an openly gay HIV positive individual to head up the largest AIDS governmental organization, and actually he put forward a very provocative campaign to fight anti, to fight homophobia. So we have really concrete. Is that in the record? It is. I'm sorry, let me just pull a site for you. Oh, I don't have the case site, but it's in the article, HIV and AIDS in Latin America. I don't have the record page. I'm sorry about that. The individual is Jorge Saavedra. So there's perhaps cases where a petitioner could demonstrate unable or unwilling to control, but it's simply not this case. We have significant evidence that the government is taking steps to address homophobia and to address treatment for HIV positive individuals. The record site is 274. Thank you, Your Honor. And I'd just like to point out again, as we've discussed, I mean, when looking at the evidence in this record, it's most similar to that that the court addressed in Bringas-Rodriguez and Castro-Martinez. You know, there are en banc proceedings pending in Bringas. Correct. Do we need to wait to see what happens with that? I don't believe we do because, as I said, it's a case-by-case. It's a case-by-case evaluation of the evidence in each case. Bringas is helpful, and I think it's in a helpful point of comparison, so is Castro. But it wouldn't control, regardless of the outcome of the evidence in this case. Standing this case on its own. Standing this case on its own, Bringas is helpful, but the evidence in this case does not compel a contrary conclusion to that reached by the agency. Okay. Okay. Thank you, Your Honor. Thank you. Your Honors, I just wanted to make one additional point, or reiterate a point. The respondent is making arguments about the evidence and whether it's strong enough to meet a burden that the board could and should have made in its decision, but did not do so. The board said that the petitioner could not establish that there was a pattern in practice of persecution in Mexico against HIV individuals where the country report stated men and women receive equal access to treatment. That was their only reasoning in this case. And so remand is proper so that the board can actually give a reasoned decision. If the board had actually laid out why all of the other evidence that we've cited to in the record about denial of life-saving medical treatment, denial of police protection, and all of these other factors, if the board had properly reviewed those, then this court would have a different inquiry. But right now this court is looking at one sentence that the board pulled out that frankly does not support the conclusion. And you're focusing only on the HIV. That's correct, Your Honor. And I think that that enough warrants remand because the board did not make a reasoned decision. The board did not give this court anything to properly review about whether all of that evidence. The implication that men and women are given equal access should also, we should also focus on the fact, though, that they are given access because that's also implicit in that conclusion. Yes, it is, but there's no indication of how much access. And further, that's not the petitioner's entire claim. He's not saying only he will be persecuted because he doesn't have access to treatment. That would also be a different argument. He's saying given all of the factors, which are access to emergency life-saving services unrelated to HIV, lack of protection by the police, inability to find any employment, all of those factors are coming into that question of whether he will be persecuted. And frankly, it just doesn't appear from this record that the board properly considered any of that. Okay. Thank you, counsel. Thank you. We appreciate your arguments. The matter is submitted.
judges: Paez, Bybee, Tigar